UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

APRIL TAULBEE

           Plaintiff,           Civil Action No. 1:21-cv-00228

v.           JURY TRIAL DEMANDED

D'YOUVILLE COLLEGE,

           Defendant.

## COMPLAINT

Plaintiff, April Taulbee, by and through her attorneys, The Coppola Firm, hereby files this complaint against defendants, respectfully states:

1. Ms. Taulbee brings this action against D'Youville College ("D'Youville") to redress violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§2601-2654. Specifically, Ms. Taulbee was terminated from her employment in retaliation for her appropriate and approved use of FMLA leave for her FMLA-qualifying condition(s). This action is one for money damages, including liquidated damages, and all available damages and remedies resulting from defendant's violations of the FMLA.

### JURISDICTION and VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §1331 because Ms. Taulbee has raised federal claims under the FMLA.

3. This Court has personal jurisdiction over D'Youville because D'Youville is a private college located at 320 Porter Avenue, Buffalo, Erie County, New York.

4. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this District because D'Youville conducts substantial, systematic, and continuous activity in this District, is

subject to personal jurisdiction in this District and because all of the acts underlying this lawsuit occurred in this District.

5. This action is timely commenced.

## PARTIES

6. Plaintiff April Taulbee is an individual residing in the City of Buffalo, County of Erie, and State of New York.

7. Ms. Taulbee has multiple sclerosis, a condition that was diagnosed well before the actions that gave rise to this lawsuit.

8. Ms. Taulbee has a "serious health condition" within the meaning of the FMLA.

9. Ms. Taulbee is an "individual with a disability" as defined by the Americans with Disabilities Act Amendments Act ("ADAAA").

10. Ms. Taulbee is also an individual who has a "disability" as defined by New York State Human Rights Law § 296.

11. Ms. Taulbee was employed by D'Youville for at least twelve (12) months prior to her making a request for a leave due to her medical condition.

12. Ms. Taulbee performed at least 1,250 hours of service during the twelve (12) months prior to her request for a leave.

13. Ms. Taulbee is an "eligible employee" pursuant to the FMLA.

14. Defendant D'Youville College is a private college offering varying educational opportunities located at the address set forth above.

15. D'Youville is an employer engaged in commerce or an industry or activity affecting commerce that employed more than fifty (50) employees in twenty (20) or more

work weeks at all relevant times and in the year 2018 and therefore must comply with the requirements of the FMLA.

## FACTS

16. Ms. Taulbee was hired by D'Youville College in 2001 in the job title "Webmaster" and continued to be employed by D'Youville until 2019.

17. Ms. Taulbee's job description neither articulated the standard work hours required for the position, nor the essential functions of the role.

18. Ms. Taulbee has progressive multiple sclerosis (MS). She was diagnosed in March 2007

19. D'Youville became aware of Ms. Taulbee's MS diagnosis in July 2009

20. Ms. Taulbee's MS inhibits her ability to engage in the major life activities of caring for herself, performing manual tasks, sleeping, walking, standing, lifting, bending, reading, concentrating, thinking, and working.

21. Ms. Taulbee's MS also inhibits the major bodily functions of the immune system, normal cell growth, digestive system, bowel, bladder, neurological system, brain, and circulatory systems.

22. Ms. Taulbee's MS requires continuing treatment from doctors, including a specialist healthcare provider, and she will require such treatment for the rest of her life.

23. Ms. Taulbee utilizes a wheelchair due to the mobility impairments she experiences as a result of her MS.

24. The D'Youville campus is not fully accessible for individuals with disabilities.

25. As a result of her MS and defendant's inaccessibility in 2011 Ms. Taulbee requested, and was granted, the ability to work from home which allowed her to successfully perform the functions of her job as an individual with a disability.

26. Ms. Taulbee continued to successfully complete the obligations of her employment while using the reasonable accommodation of working from home from 2011 to 2019.

27. During this period Ms. Taulbee did not receive any negative performance evaluations and was not disciplined nor admonished for any perceived deficiencies in her ability to do her job. In addition, Ms. Taulbee was given additional responsibilities during this time, such as supervising additional employees.

28. Ms. Taulbee has a stellar record of work performance.

29. Ms. Taulbee often completed work from home outside of the 8:30AM to 4:30PM operating hours, or standard business hours, because her role supported various D'Youville employees who worked outside of the standard work hours.

30. Also, Ms. Taulbee completed work outside of standard business hours for the purpose of ensuring that web sites and other materials used by employees during standard business hours were not impacted by her work on them; because many of the vendors Ms. Taulbee worked with operated on Pacific Standard Time, rather than Eastern Standard Time; and occasionally, due to her need to attend medical appointments related to her disability in the morning hours.

31. From January 2017 to May 2017, Ms. Taulbee reported to Randyll Bowen. At no time during this reporting period did Mr. Bowen request that Ms. Taulbee alter her work hours to 8:30AM to 4:30PM.

32. In mid-2017, a new Marketing and Communications Department was created, and Colin Nekritz was hired as Director. At that time, Ms. Taulbee's position, along with two other positions she supervised, were moved to report to Mr. Nekritz in the Marketing and Communications Department.

33. The Marketing and Communications Department was moved to a new building which did not have an accessible bathroom designed for use by someone confined to a wheelchair.

34. The new location of the Marketing and Communications Department not located reasonably near an accessible restroom, requiring her between floors and buildings such that it would be impossible to make urgent used of a restroom, which her condition occasionally required.

35. On December 5, 2017, Mr. Bowen sent an email to Mr. Nekritz stating that Mr. Bowen wanted to "build a case" to demonstrate that Ms. Taulbee could "no longer physically perform the requirements of the job."

36. In February 2018, Mr. Nekritz submitted status change requests for four employees in the department, including the two employees who reported to Ms. Taulbee.

37. This paperwork was not processed until May 2018.

38. In or around May 2018, Ms. Taulbee requested that Mr. Nekritz reevaluate her role, given her supervisory responsibilities. Mr. Nekritz denied this request, explaining that if he were to change her title and pay rate, Mr. Bowen and D'Youville President, Lorrie Clemo would expect her to be "on campus regularly" in contravention of her approved, reasonable accommodation to work from home.

39. Ms. Taulbee was aware that Mr. Bowen and Ms. Clemo wanted her to fail at her job, and they tried to make her working conditions untenable. Understandably, this caused Ms. Taulbee a great deal of stress, which exacerbated Ms. Taulbee's MS. Ms. Taulbee sought her doctors care for this exacerbation.

40. On February 13, 2019, Ms. Taulbee informed Jody Sirianni, Executive Director of Human Resources for D'Youville, that her physician had directed her to take some time away from work due a serious exacerbation of her MS.

41. Ms. Sirianni replied and said that Janine Maiorana, Human Resources Manager for D'Youville, would work directly with Ms. Taulbee to set up her leave.

42. The following day, February 14, 2019, Ms. Sirianni sent Ms. Taulbee information about how to work with D'Youville's disability insurance carrier to file a claim for disability benefits.

43. Ms. Sirianni did not include in this email, or in any subsequent communications, information about Ms. Taulbee's eligibility under FMLA nor did Ms. Sirianni or anyone else at D'Youville provide Ms. Taulbee with a notice of rights and responsibilities as required by the FLMA.

44. On March 7, 2019, Mr. Bowen sent a memo to Human Resources describing the planned elimination of two positions; Ms. Taulbee's and one held by Ms. Roxanne Roland, an African American woman who was expecting a child at the time of her termination.

45. Mr. Bowen claimed in this memo that D'Youville had a shifted from onsite web hosting and maintenance to offsite web hosting and maintenance and therefore Ms. Taulbee's role was no longer necessary. This was not true; at the time of the memo was

sent the web sites were maintained by Ms. Taulbee and were hosted on D'Youville's internal servers.

46. On March 25, 2019, Ms. Taulbee returned to work.

47. On March 27, 2019, Ms. Taulbee's supervisor, Mr. Nekritz, was terminated, effectively making Mr. Bowen Ms. Taulbee's supervisor once more.

48. On March 29, 2019, Mr. Bowen requested Ms. Taulbee share login credentials for the administrative software applications Ms. Taulbee was maintaining for the department.

49. On April 1, 2019, Ms. Taulbee delivered the requested materials.

50. On April 2, 2019 – mere days after her return from leave – Ms. Taulbee was informed that her position had been eliminated.

51. Upon information and belief, on May 8, 2019, a meeting was held with the IT and Web Services department to discuss the need for someone to perform the webmaster work that Ms. Taulbee had been performing prior to her termination.

52. Upon information and belief, at the May 8, 2019 meeting, the IT Director indicated that they did not have anyone on their staff who could fulfill those responsibilities. At the conclusion of the meeting, after consensus was reached that the tasks needed to be done, D'Youville decided to hire someone to fill the role.

53. On June 14, 2019, Ms. Taulbee timely filed a complaint regarding D'Youville's unlawful conduct with the New York State Division of Human Rights (NYSDHR). This complaint was simultaneously filed with Equal Employment Opportunity Commission (EEOC) on that same date pursuant to the work sharing agreement between NYSDHR and the EEOC. The EEOC issued an EEOC charge number; 16GB904066.

54. NYSDHR investigated the complaint and issued a probable cause finding on December 13, 2019, and Ms. Taulbee is awaiting a hearing.

**FIRST CAUSE OF ACTION**

**VIOLATION OF FMLA**

55. Ms. Taulbee repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

56. Ms. Taulbee informed her employer that her physician directed her to take leave from work due to an exacerbation of her multiple sclerosis, a "serious health condition" under the FMLA.

57. FMLA provides for job-protected leave.

58. Ms. Taulbee was qualified for her position.

59. D'Youville terminated Ms. Taulbee almost immediately upon her return to work.

60. D'Youville's termination of Ms. Taulbee upon her return to work was done intentionally to violate her FMLA rights or with reckless disregard for her FMLA rights.

61. By doing so, D'Youville willfully retaliated against Ms. Taulbee for her use of FMLA leave.

62. Ms. Taulbee suffered significant financial harm as a consequence of D'Youville's retaliation against her for the exercise of her rights under the FMLA.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff demands judgment against defendant as follows:

(1) Granting judgment in her favor and declaring that D'Youville's actions violated the FMLA;

(2) Enjoining D'Youville, including each and every respective departments, agencies, and other instrumentalities, and all others in concert or participation with them, from engaging in discriminatory policies and practices against individuals asserting or seeking to assert their FMLA rights;

(3) Ordering D'Youville to comply with the requirements of the FMLA;

(4) Awarding back pay, front pay, liquidated damages, actual costs, and attorneys' fees to Ms. Taulbee in an amount exceeding $5,000,000.00 for financial injuries suffered as a result of D'Youville's failures (willful and otherwise) to comply with the requirements of the FMLA; and

(5) Awarding such other and further relief as this Court deems just and proper.

*PLAINTIFF DEMANDS A TRIAL BY JURY*

Dated: February 9, 2021
Buffalo, New York

**THE COPPOLA FIRM**
Attorneys for Plaintiff

By: _____
Lisa A. Coppola, Esq.
Jennifer R. Scharf, Esq.
3960 Harlem Road
Buffalo, New York 14226
(716) 839-9700
Email: lcoppola@coppola-firm.com