UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

APRIL TAULBEE,

                Plaintiff,                  Civil Action No.  1:21-cv-00228

    v.                                JURY TRIAL DEMANDED

D'YOUVILLE COLLEGE,

                Defendant.

———————————————————————

## <u>AMENDED COMPLAINT</u>

Plaintiff, April Taulbee, by and through her attorneys, The Coppola Firm, hereby files this amended complaint against defendant, and respectfully states:

1.      Ms. Taulbee brings this action against D'Youville College ("D'Youville") to redress violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§2601-2654, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and New York Human Rights Law ("NYHRL").  Specifically, Ms. Taulbee was terminated from her employment because of her disability, and/or in retaliation for her engaging in the protected activity of seeking a reasonable accommodation for her disability, and/or in retaliation for her appropriate and approved use of FMLA leave for her FMLA-qualifying condition(s).  This action is one for money damages, including liquidated damages, and all available damages and remedies resulting from defendant's violations of the FMLA, ADA, and NYHRL.

## JURISDICTION and VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §1331 because Ms. Taulbee has raised federal claims under the FMLA and ADA.

3.      This Court also has subject matter jurisdiction over plaintiff's New York State law claims because they are so related to plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution and/or they are so authorized pursuant to 28 U.S.C. § 1367(a).

4.      This Court has personal jurisdiction over D'Youville because D'Youville is a private college located at 320 Porter Avenue, Buffalo, Erie County, New York.

5.      Pursuant to 28 U.S.C. § 1391, venue is properly laid in this District because D'Youville conducts substantial, systematic, and continuous activity in this District, is subject to personal jurisdiction in this District and because all of the acts underlying this lawsuit occurred in this District.

6.      This action is timely commenced.

## PARTIES

7.      Plaintiff April Taulbee is an individual residing in the City of Buffalo, County of Erie, and State of New York.

8.      Ms. Taulbee has multiple sclerosis, a condition that was diagnosed well before the actions that gave rise to this lawsuit.

9.      Ms. Taulbee has a "serious health condition" within the meaning of the FMLA.

10.     Ms. Taulbee is an "individual with a disability" as defined by the ADA.

11.     Ms. Taulbee is also an individual who has a "disability" as defined by New York State Human Rights Law § 296.

12.     Ms. Taulbee was employed by D'Youville for at least twelve (12) months prior to her making a request for a leave due to her medical condition.

13.     Ms. Taulbee performed at least 1,250 hours of service during the twelve (12) months prior to her request for a leave.

14.     Ms. Taulbee is an "eligible employee" pursuant to the FMLA.

15.     Defendant D'Youville College is a private college offering varying educational opportunities located at the address set forth above.

16.     D'Youville is an employer engaged in commerce or an industry or activity affecting commerce that employed more than fifty (50) employees in twenty (20) or more work weeks at all relevant times and in the year 2018 and therefore must comply with the requirements of the FMLA.

**FACTS**

17.     Ms. Taulbee was hired by D'Youville College in 2001 in the job title "Webmaster" and continued to be employed by D'Youville until 2019.

18.     Ms. Taulbee's job description neither articulated the standard work hours required for the position, nor the essential functions of the role.

19.     Ms. Taulbee has progressive multiple sclerosis (MS).  She was diagnosed in March 2007.

20.     D'Youville became aware of Ms. Taulbee's MS diagnosis in July 2009.

21.     Ms. Taulbee's MS inhibits her ability to engage in the major life activities of caring for herself, performing manual tasks, sleeping, walking, standing, lifting, bending, reading, concentrating, thinking, and working.

22.     Ms. Taulbee's MS also inhibits the major bodily functions of the immune system, normal cell growth, digestive system, bowel, bladder, neurological system, brain, and circulatory systems.

23.     Ms. Taulbee's MS requires continuing treatment from doctors, including a specialist healthcare provider, and she will require such treatment for the rest of her life.

24.     Ms. Taulbee utilizes a wheelchair due to the mobility impairments she experiences as a result of her MS.

25.     The D'Youville campus is not fully accessible for individuals with disabilities.

26.     As a result of her MS and defendant's inaccessibility in 2011 Ms. Taulbee requested, and was granted, the ability to work from home which allowed her to successfully perform the functions of her job as an individual with a disability.

27.     Ms. Taulbee continued to successfully complete the obligations of her employment while using the reasonable accommodation of working from home from 2011 to 2019.

28.     During this period Ms. Taulbee did not receive any negative performance evaluations and was not disciplined nor admonished for any perceived deficiencies in her ability to do her job.  In addition, Ms. Taulbee was given additional responsibilities during this time, such as supervising additional employees.

29.     Ms. Taulbee has a stellar record of work performance.

30.     Ms. Taulbee often completed work from home outside of the 8:30AM to 4:30PM operating hours, or standard business hours, because her role supported various D'Youville employees who worked outside of the standard work hours.

31.     Also, Ms. Taulbee completed work outside of standard business hours for the purpose of ensuring that web sites and other materials used by employees during standard business hours were not impacted by her work on them; because many of the vendors Ms. Taulbee worked with operated on Pacific Standard Time, rather than Eastern Standard Time; and occasionally, due to her need to attend medical appointments related to her disability in the morning hours.

32.     From January 2017 to May 2017, Ms. Taulbee reported to Randyll Bowen.  At no time during this reporting period did Mr. Bowen request that Ms. Taulbee alter her work hours to 8:30AM to 4:30PM.

33.     In mid-2017, a new Marketing and Communications Department was created, and Colin Nekritz was hired as Director.  At that time, Ms. Taulbee's position, along with two other positions she supervised, were moved to report to Mr. Nekritz in the Marketing and Communications Department.

34.     The Marketing and Communications Department was moved to a new building which did not have an accessible bathroom designed for use by someone confined to a wheelchair.

35.     The new location of the Marketing and Communications Department not located reasonably near an accessible restroom, requiring her between floors and buildings such that it would be impossible to make urgent used of a restroom, which her condition occasionally required.

36.     On December 5, 2017, Mr. Bowen sent an email to Mr. Nekritz stating that Mr. Bowen wanted to "build a case" to demonstrate that Ms. Taulbee could "no longer physically perform the requirements of the job."

37.     In February 2018, Mr. Nekritz submitted status change requests for four employees in the department, including the two employees who reported to Ms. Taulbee.

38.     This paperwork was not processed until May 2018.

39.     In or around May 2018, Ms. Taulbee requested that Mr. Nekritz reevaluate her role, given her supervisory responsibilities.  Mr. Nekritz denied this request, explaining that if he were to change her title and pay rate, Mr. Bowen and D'Youville President, Lorrie Clemo would expect her to be "on campus regularly" in contravention of her approved, reasonable accommodation to work from home.

40.     Ms. Taulbee was aware that Mr. Bowen and Ms. Clemo wanted her to fail at her job, and they tried to make her working conditions untenable.  Understandably, this caused Ms. Taulbee a great deal of stress, which exacerbated Ms. Taulbee's MS.  Ms. Taulbee sought her doctors' care for this exacerbation.

41.     On February 13, 2019, Ms. Taulbee informed Jody Sirianni, Executive Director of Human Resources for D'Youville, that her physician had directed her to take some time away from work due a serious exacerbation of her MS.

42.     Ms. Sirianni replied and said that Janine Maiorana, Human Resources Manager for D'Youville, would work directly with Ms. Taulbee to set up her leave.

43.     The following day, February 14, 2019, Ms. Sirianni sent Ms. Taulbee information about how to work with D'Youville's disability insurance carrier to file a claim for disability benefits.

44.     Ms. Sirianni did not include in this email, or in any subsequent communications, information about Ms. Taulbee's eligibility under FMLA nor did Ms.

Sirianni or anyone else at D'Youville provide Ms. Taulbee with a notice of rights and responsibilities as required by the FLMA.

45.     On March 7, 2019, Mr. Bowen sent a memo to Human Resources describing the planned elimination of two positions; Ms. Taulbee's and one held by Ms. Roxanne Roland, an African American woman who was expecting a child at the time of her termination.

46.     Mr. Bowen claimed in this memo that D'Youville had shifted from onsite web hosting and maintenance to offsite web hosting and maintenance and therefore Ms. Taulbee's role was no longer necessary.  This was not true; at the time of the memo was sent the web sites were maintained by Ms. Taulbee and were hosted on D'Youville's internal servers.

47.     On March 25, 2019, Ms. Taulbee returned to work.

48.     On March 27, 2019, Ms. Taulbee's supervisor, Mr. Nekritz, was terminated, effectively making Mr. Bowen Ms. Taulbee's supervisor once more.

49.     On March 29, 2019, Mr. Bowen requested Ms. Taulbee share login credentials for the administrative software applications Ms. Taulbee was maintaining for the department.

50.     On April 1, 2019, Ms. Taulbee delivered the requested materials.

51.     On April 2, 2019 – mere days after her return from leave – Ms. Taulbee was informed that her position had been eliminated.

52.     Upon information and belief, on May 8, 2019, a meeting was held with the IT and Web Services department to discuss the need for someone to perform the webmaster work that Ms. Taulbee had been performing prior to her termination.

53.     Upon information and belief, at the May 8, 2019 meeting, the IT Director indicated that they did not have anyone on their staff who could fulfill those responsibilities.  At the conclusion of the meeting, after consensus was reached that the tasks needed to be done, D'Youville decided to hire someone to fill the role.

54.     Upon information and belief, defendants filled Ms. Taulbee's role with individuals who were not disabled.

55.     On June 14, 2019, Ms. Taulbee timely filed a complaint regarding D'Youville's unlawful conduct with the New York State Division of Human Rights ("SDHR").  This complaint was simultaneously filed with Equal Employment Opportunity Commission (EEOC) on that same date pursuant to the work sharing agreement between SDHR and the EEOC.  The EEOC issued an EEOC charge number; 16GB904066.

56.     NYSDHR investigated the complaint and issued a probable cause finding on December 13, 2019, after which Ms. Taulbee was awaiting a hearing.

## CONDITIONS PRECEDENT TO ACTION

57.     Ms.  Taulbee repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

58.     Ms. Taulbee has complied with all the jurisdictional prerequisites to this action pursuant to the ADA as follows:

> A.   In compliance with the time prescribed by the ADA, on or about June 13, 2019, Ms. Taulbee timely filed a charge of disability discrimination with SDHR.
>
> B.   Upon information and belief, on or about the same date as the aforementioned SDHR charge was filed, the SDHR caused a copy of the charge to be filed with the United States Equal Employment Opportunity Commission ("EEOC").

C.  By letter received July 30, 2021, the EEOC sent a notification to Ms. Taulbee that she had the Right to Sue within 90 days of the receipt of the notification.  A copy of the SDHR Charge and EEOC Right to Sue Notice are attached as **Exhibit A**.

D.  Ms. Taulbee has timely filed this action within 90 days of the receipt of the EEOC's Right to Sue Notice.


**FIRST CAUSE OF ACTION**

**VIOLATION OF FMLA**

59.   Ms. Taulbee repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

60.   Ms. Taulbee informed her employer that her physician directed her to take leave from work due to an exacerbation of her multiple sclerosis, a "serious health condition" under the FMLA.

61.   FMLA provides for job-protected leave.

62.   Ms. Taulbee was qualified for her position.

63.   D'Youville terminated Ms. Taulbee almost immediately upon her return to work.

64.   D'Youville's termination of Ms. Taulbee upon her return to work was done intentionally to violate her FMLA rights or with reckless disregard for her FMLA rights.

65.    By doing so, D'Youville willfully retaliated against Ms. Taulbee for her use of FMLA leave.

66.   Ms. Taulbee suffered significant financial harm as a consequence of D'Youville's retaliation against her for the exercise of her rights under the FMLA.

**SECOND CAUSE OF ACTION**

**DISABILITY DISCRIMINATION IN VIOLATION OF ADA**

67.     Ms. Taulbee repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

68.     Ms. Taulbee was a qualified person, performing her job for nearly two decades.

69.     Ms. Taulbee was diagnosed with MS, a qualifying disability.

70.     From 2011 to 2019, Ms. Taulbee successfully performed the functions of her job with a reasonable accommodation.

71.     Ms. Taulbee never received a poor performance evaluation from D'Youville.

72.     In or around 2017, Mr. Bowen decided to "build a case" against Ms. Taulbee that she could not physically do her job.

73.     In or around 2018, Mr. Bowen tried to make Ms. Taulbee's work life miserable, including pressuring her to come onto campus (despite her work from home accommodation) to a worksite without a reasonably accessible restroom, and criticizing her work hours.

74.     Ms. Taulbee's MS was exacerbated by stress, causing her to suffer increased physical manifestations of her disability.

75.     Ms. Taulbee took a medical leave in early 2019 because of the stress-related exacerbations to her MS.

76.     Within days of her return to D'Youville in or around April 2019, she was terminated.

77.     As a direct and proximate result of defendant's discrimination against Ms. Taulbee, Ms. Taulbee has suffered and continues to suffer substantial losses, including the loss of past and future earnings and employment benefits together with attorneys' fees and expenses.

78.     As a direct and proximate result of defendant's discrimination against Ms. Taulbee, Ms. Taulbee has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, and physical manifestations of the stress to her system, exacerbating her MS.

79.     Ms. Taulbee has incurred and continues to incur legal expenses and attorneys' fees.  Ms. Taulbee is entitled to recover reasonable attorneys' fees and costs (including expert costs).

80.     Defendant's conduct constitutes malicious, willful, wanton, and/or reckless indifference to Ms. Taulbee's protected rights, and this entitles plaintiff to punitive damages against defendant.

### **THIRD CAUSE OF ACTION**

### **RETALIATION IN VIOLATION OF THE ADA**

81.     Ms. Taulbee repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

82.     Ms. Taulbee was a qualified person, performing her job for nearly two decades with a qualifying disability.

83.     Defendant was aware of Ms. Taulbee's disability.

84.    Ms. Taulbee engaged in the protected activity of requesting a continued work-from-home accommodation and other reasonable accommodations, by objecting to efforts to force her to return to campus, and by taking a job-protected medical leave.

85.    Defendant terminated Ms. Taulbee's employment upon her return from a medical leave.

86.    Defendant terminated Ms. Taulbee's employment in retaliation for engaging in the above-described protected activities.

87.    As a direct and proximate result of defendant's retaliation against Ms. Taulbee, Ms. Taulbee has suffered and continues to suffer substantial losses, including the loss of past and future earnings and employment benefits together with attorneys' fees and expenses.

88.    As a direct and proximate result of defendant's willful, knowing, and intentional retaliation against Ms. Taulbee, Ms. Taulbee has suffered and continues to suffer humiliation, emotional distress, physical and mental pain and anguish, and physical manifestations of the stress to her system, exacerbating her MS.

89.    Ms. Taulbee has incurred and continues to incur legal expenses and attorneys' fees.  Ms. Taulbee is entitled to recover reasonable attorneys' fees and costs (including expert costs).

90.    Defendant's conduct constitutes malicious, willful, wanton, and/or reckless indifference to Ms. Taulbee's protected rights, and this entitles plaintiff to punitive damages against defendant.

**FOURTH CAUSE OF ACTION**

**DISABILITY DISCRIMINATION IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW**

91.     Ms. Taulbee repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

92.     The New York Executive Law § 296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer or licensed agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse or hire or employ or to bar or to discharge from employment such individual in compensation or in terms, condition or privileges of employment."

93.     New York Executive Law § 296(3)(a) provides that: "It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities . . . of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

94.     Defendant's conduct, as alleged, violated the New York State Human Rights Law, including but not limited to N.Y. Exec. Law § 296.  Defendant committed unlawful employment practices, including but not limited to:

- Taking adverse employment actions against Ms. Taulbee such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Ms. Taulbee, in whole or in part, on the basis of Ms. Taulbee's disability and/or other good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Failing to engage Ms. Taulbee in a good faith interactive process regarding her request for ongoing accommodation in violation of the New York State Human Rights Law, including but not limited to N.Y. Exec. Law § 296;

- Harassing Ms. Taulbee and/or creating a hostile work environment in whole or in part on the basis of Ms. Taulbee's disability and/or good faith complaints in

violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on Ms. Taulbee's disability and/or other good faith complaints, and/or other protected characteristic or activity in violation of the New York State Human Rights Law, including but not limited to N.Y. Exec. Law § 296;

- Ms. Taulbee's disability, and/or good faith complaints protected by the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296, were motivating factors in defendant's decision to terminate Ms. Taulbee, not to retain, hire, or otherwise employ Ms. Taulbee in any position, and/or to take other adverse job actions against Ms. Taulbee.

- Defendant's conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Ms. Taulbee to discrimination in her civil rights and/or to harassment.

95.     As a direct and proximate result of defendant's discrimination against Ms. Taulbee and failure to provide a reasonable accommodation to Ms. Taulbee, Ms. Taulbee has suffered and continues to suffer substantial losses, including the loss of past and future earnings and employment benefits together with attorneys' fees and expenses.

96.     As a direct and proximate result of defendant's willful, knowing, and intentional retaliation against Ms. Taulbee, Ms. Taulbee has suffered and continues to suffer humiliation, emotional distress, physical and mental pain and anguish, and physical manifestations of the stress to her system, exacerbating her MS.

97.     Ms. Taulbee has incurred and continues to incur legal expenses and attorneys' fees.  Ms. Taulbee is entitled to recover reasonable attorneys' fees and costs (including expert costs).

98.     Defendant's conduct constitutes malicious, willful, wanton, and/or reckless indifference to Ms. Taulbee's protected rights, and this entitles plaintiff to punitive damages against defendant.

## FIFTH CAUSE OF ACTION

## RETALIATION FOR OPPOSING A DISCRIMINATORY PRACTICE IN VIOLATION OF NEW YORK HUMAN RIGHTS LAW

99.   Ms. Taulbee repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

100.   Defendant's conduct, as alleged, violated the New York State Human Rights Law, specifically N.Y. Exec. Law §§ 296(1)(e) and 296(7), and defendant committed unlawful employment practices, including but not limited to retaliating against Ms. Taulbee by terminating her employment for seeking to exercise rights guaranteed under the New York State Human Rights Law and/or for opposing defendant's failure to provide such rights, including the right to be free from discrimination and harassment based on disability, and the right to engage in the interactive process, in violation of New York State Human Rights Law §§ 296(1)(e) and 296(7).

101.   As a direct and proximate result of defendant's retaliation against Ms. Taulbee, Ms. Taulbee has suffered and continues to suffer substantial losses, including the loss of past and future earnings and employment benefits together with attorneys' fees and expenses.

102.   As a direct and proximate result of defendant's willful, knowing, and intentional retaliation against Ms. Taulbee, Ms. Taulbee has suffered and continues to suffer humiliation, emotional distress, physical and mental pain and anguish, and physical manifestations of the stress to her system, exacerbating her MS.

103.   Ms. Taulbee has incurred and continues to incur legal expenses and attorneys' fees.  Ms. Taulbee is entitled to recover reasonable attorneys' fees and costs (including expert costs).

104.   Defendant's conduct constitutes malicious, willful, wanton, and/or reckless indifference to Ms. Taulbee's protected rights, and this entitles plaintiff to punitive damages against defendant.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff demands judgment against defendant as follows:

(1)      Granting judgment in her favor and declaring that D'Youville's actions violated the FMLA, the ADA, and New York Human Rights Law;

(2)      Enjoining D'Youville, including each and every respective departments, agencies, and other instrumentalities, and all others in concert or participation with them, from engaging in discriminatory policies and practices against individuals asserting or seeking to assert their FMLA rights;

(3)          Ordering D'Youville to comply with the requirements of the FMLA, the ADA, and NYHRL;

(4)      Awarding back pay, front pay, liquidated damages, actual costs, and attorneys' fees to Ms. Taulbee in an amount exceeding $5,000,000.00 for financial injuries suffered as a result of D'Youville's failures (willful and otherwise) to comply with the requirements of the FMLA, ADA, and New York Human Rights Law; and

(5)      Awarding such other and further relief as this Court deems just and proper.


*PLAINTIFF DEMANDS A TRIAL BY JURY*

Dated:  January 11, 2022
          Buffalo, New York

**THE COPPOLA FIRM**
Attorneys for Plaintiff

By:  _____
          Lisa A. Coppola, Esq.
          Jennifer R. Scharf, Esq.
          3960 Harlem Road
          Buffalo, New York  14226
          (716) 839-9700
          Email:  lcoppola@coppola-firm.com

16

# EXHIBIT A

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

APRIL M. TAULBEE,

                                        Complainant,

                    v.

D'YOUVILLE COLLEGE, RANDYLL BOWEN, VICE
PRESIDENT FOR ENROLLMENT MGMT AND
MARKETING,

                                        Respondents.

---

VERIFIED COMPLAINT
Pursuant to Executive Law,
Article 15

Case No.
**10202367**

Federal Charge No. 16GB904066

I, April M. Taulbee, residing at 105 Jewett Parkway, Buffalo, NY, 14214, charge the above named respondents, whose address is 320 Porter Ave., Buffalo, NY, 14201 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of disability.

Date most recent or continuing discrimination took place is 4/2/2019.

The allegations are:

PLEASE SEE ATTACHED



**New York State Division of Human Rights**
**Employment Complaint Form**

RECEIVED
JUN 14 2019
NYSDHR BUFFALO
REGIONAL OFFICE

| 1. Your contact information: | | | |
|---|---|---|---|
| First Name  April | | Middle Initial/Name  M. | |
| Last Name  Taulbee | | | |
| Street Address/ PO Box  105 Jewett Parkway | | Apt or Floor #: | |
| City  Buffalo | | State  NY | Zip Code 14214 |

**2. Regulated Areas:** You believe you were discriminated against in the area of:
- ☒ Employment *(including paid internship)*
- ☐ Apprentice Training
- ☐ Internship *(unpaid only)*
- ☐ Labor Organization
- ☐ Employment Agencies
- ☐ Licensing
- ☐ Volunteer Firefighting *(excludes disability, age, domestic violence victim status, arrest, conviction, genetic history)*

**3. You are filing a complaint against:**

| | | | |
|---|---|---|---|
| Employer Name  D'Youville College | | | |
| Street Address/ PO Box  320 Porter Avenue | | | |
| City  Buffalo | State  NY | | Zip Code  14201 |

Telephone Number
(716) 829-8000                                              Ext.

In what *county or borough* did the violation take place?

Erie County, New York

Individual people who discriminated against you:
Name: Randyll Bowen          Title: Vice President for Enrollment Management & Marketing
Name:                                   Title:

If you need more space, please list them on a separate piece of paper.

**4. Date of alleged discrimination** *(must be within one year of filing):*
The most recent act of discrimination happened on:   April   2   2019
                                                                              month   day   year

**5. For employment and internships, how many employees does this company have?**
☐1-3    ☐4-14    ☐15-19    ☒ 20 or more    ☐Don't know

**6. Are you currently working for this company?**

| | | |
|---|---|---|
| ☐  Yes. Date of hire: ___ ___ ___ <br> month  day  year | What is your position? | |
| ☒  No. Last day of work: April 2 2019 <br> month  day  year | What was your position? Webmaster | |
| ☐  I was never hired. <br> Date of application: ___ ___ ___ <br> month  day  year | What position did you apply for? | |

**7. Basis of alleged discrimination**:

Check *ONLY* the boxes that you believe were the reasons for discrimination. Please look at page 2 of "Instructions" for an explanation of each type of discrimination.

| | |
|---|---|
| ☐ **Age**:<br>Date of Birth: _____ | ☐ **Marital Status**:<br>Please specify: _____ |
| ☐ **Arrest Record** *(resolved in your favor or youthful offender record or sealed conviction record)* | ☐ **Military Status**:<br>☐ Active Duty      ☐ Reserves |
| ☐ **Conviction Record** | ☐ **National Origin**:<br>Please specify: _____ |
| ☐ **Creed/ Religion**:<br>Please specify: _____ | ☐ **Predisposing Genetic Characteristic**:<br>Please specify: _____ |
| ☒ **Disability**:<br>Please specify:  wheelchair bound due to MS | ☐ **Pregnancy-Related Condition**:<br>Please specify: _____ |
| ☐ **Domestic Violence Victim Status** | ☐ **Race/Color or Ethnicity**:<br>Please specify: _____ |
| ☐ **Familial Status**:<br>Please specify: _____ | ☐ **Sexual Orientation**:<br>Please specify: _____ |
| ☐ **Gender Identity or Expression, Including the Status of Being Transgender**: | ☐ **Sex**:<br>Please specify: _____<br>Specify if the discrimination involved:<br>☐ Pregnancy  ☐ Sexual Harassment |

If you believe you were treated differently after you filed or helped someone file a discrimination complaint, participated as a witness to a discrimination complaint, or opposed or reported discrimination due to any category above, check below:

☐ **Retaliation**: How did you oppose discrimination: _____

**8. Acts of alleged discrimination**: *What did the person/company you are complaining against do? Check all that apply*

| | | | |
|---|---|---|---|
| ☐ Refused to hire me | ☒ Denied me an accommodation for my disability or pregnancy-related condition | ☐ Denied me leave time or other benefits | ☐ Harassed/ intimidated me (other than sexual harassment) |
| ☒ Fired me/laid me off | ☐ Denied me overtime benefits | ☐ Sexually harassed or intimidated me | ☐ Did not call back after lay-off |
| ☐ Demoted me | ☐ Paid me a lower salary than other co-workers doing the same job | ☐ Gave me different or worse job duties than other workers doing the same job | ☐ Denied me services/treated differently by employment agency |
| ☐ Suspended me | ☐ Denied me an accommodation for my religious practices | ☐ Gave me a disciplinary notice or negative performance review | ☐ Unlawful inquiry, or limitation, specification or discrimination in job advertisement |
| ☐ Denied me training | ☐ Denied me promotion/ pay raise | ☐ Denied a license by a licensing agency | ☒ Other:<br>Retaliation for taking FMLA protected medical leave. |

**9. Description of alleged discrimination**

*Tell us more about each act of discrimination that you experienced. Please include dates, names of people involved, and explain why you think it was discriminatory. TYPE OR PRINT CLEARLY.*

While I was employed by D'Youville the college refused to provide reasonable accommodations to me which, because of my disability, were necessary for me to do my job. D'Youville then terminated me because I am disabled. More complete details of D'Youville's unlawful discrimination are included in the attached Verified Addendum to complaint. I am also submitting with this complaint an email from Randyll Bown dated December 5, 2017, in which he describes his plan to "build a case" that I could not do my job so that he could terminate me.

*If you need more space to write, please continue writing on a separate sheet of paper and attach it to the complaint form.  DO NOT WRITE IN THE MARGINS OR ON THE BACK OF THIS FORM.*

RECEIVED

JUN 14 2019

NYSDHR BUFFALO
REGIONAL OFFICE

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

_____

APRIL M. TAULBEE,

                    Complainant,

          v.                                              Case No.

D'YOUVILLE COLLEGE,

                    Respondent.

_____

## **VERIFIED ADDENDUM TO COMPLAINT**

    1.    I, April M. Taulbee, am an individual residing at 105 Jewett Parkway, in the City of Buffalo, County of Erie, and State of New York.

    2.    I am 55 years old and am wheelchair bound because I have multiple sclerosis ("MS").

    3.    My physical limitations caused by MS constitute a disability under the New York State Human Rights Law ("NYSHRL") and the Americans with Disabilities Act ("ADA").

    4.    I am a former employee of D'Youville College ("D'Youville" or "Respondent") which is private college located in New York State that employs more than 50 employees.

    5.    Upon information and belief, Respondent receives federal and New York State funding including but not limited to a New York Higher Education Capital (HECap) Grant.

    6.    D'Youville is an employer required to comply with the NYSHRL (New York

Executive Law §§ 290 *et seq.*), the ADA (42 U.S.C. §§ 12101 *et seq.*) and the Family Medical Leave Act ("FMLA") (29 U.S.C. §§ 2601 *et seq.*).

7.      D'Youville claims to be an Equal Opportunity Employer. *See, e.g.,* https://www.dyc.edu/about/administrative-offices/human-resources/.

8.      I was hired by D'Youville in August 2001 for the position of Webmaster.

9.      As a Webmaster, I was responsible for developing and maintaining all aspects of D'Youville's public websites.

10.      For 18 years, I satisfactorily completed all of my job responsibilities as Webmaster.

11.      In or around 2011, I began experiencing mobility limitations caused by MS. I notified Respondent of my mobility limitations, and Respondent granted me a reasonable, disability-related accommodation by permitting me to work from home.

12.      Given the nature of my role at D'Youville, my responsibilities easily lent themselves to being performed remotely. As a result, I successfully performed all of my job duties for Respondent with a work-from-home accommodation.

13.      In or around 2017, the acceptance of disabled individuals by D'Youville's leadership dramatically changed.

14.      In or around 2016, Randyll Bowen was hired and eventually replaced my former supervisor in 2017.

15.      As my supervisor, Mr. Bowen attempted to withdraw my disability-related accommodation by requesting that I come to campus every week. I attempted to comply with this request, but I was physically unable to do so and therefore continued to work from home.

16.     At about this same time, my department's offices were moved to a different campus building which was not handicap accessible.  For example, the building to which my department's offices were moved did not have a restroom that could accommodate my wheelchair.

17.     Even though he knew that I required the use of a wheelchair, Mr. Bowen continued to insist that I come to campus each week and work in an office building that was not handicap accessible.

18.     At all relevant times, D'Youville was aware that my medical condition prevented me from being able to come to campus to work.

19.     Nonetheless, while I continued to satisfy all of my job responsibilities while working remotely, it became apparent D'Youville no longer was willing to provide me this reasonable accommodation.

20.     Upon information and belief, as early as 2017, D'Youville manifested a plan to terminate me because it did not want to accommodate my disability.

21.     This discriminatory intent is evidenced by Mr. Bowen's December 5, 2017 email in which he advised my immediate supervisor Colin Nekritz that "*[w]e need to start to build the case that she can no longer physically perform the requirements of the job.*" Exhibit A, attached (emphasis added).

22.     Upon information and belief, Mr. Nekritz opposed Mr. Bowen's plan to "build the case" against me, and Mr. Nekritz advocated for my continued employment.  This allowed me to continue to work remotely for Respondent without issue throughout 2018.

23.     In or around February 2019, I required a brief medical leave.  During that

3

leave, I received treatment for a serious health condition. I returned from medical leave on or about March 25, 2019.

24.     This medical leave was eligible for FMLA protection.

25.     In or around March 2019, Mr. Nekritz was terminated.

26.     Upon information and belief, after Mr. Nekritz was terminated, there was no one to stand up to Mr. Bowen's plan to terminate me because he did not want to accommodate my disability.

27.     Sometime after Mr. Nekritz's termination, Respondent terminated me from my job.

28.     My termination occurred just one week after I returned from medical leave.

29.     Throughout my 18-year tenure at D'Youville, I never received a negative performance review.

30.     Throughout my 18-year tenure at D'Youville, I never was disciplined.

31.     Throughout my 18-year tenure at D'Youville I was able to physically perform all aspects of my job with the work-from-home accommodation.

32.     Upon information and belief, after terminating me, D'Youville began efforts to hire an able-bodied individual to replace me as Webmaster.

33.     Upon information and belief, in the past, D'Youville has terminated individuals because they are disabled.

34.     Based on the foregoing, I hereby charge Respondent, D'Youville College, with unlawful discrimination in violation of the NYSHRL and Title I of the ADA. I also charge Respondent with violating my rights under the FMLA.

35.   I have not commenced a civil action, nor do I have an action pending before any administrative agency, based on the above-described unlawful and discriminatory practices.

*April M. Taulbee*

April M. Taulbee

STATE OF NEW YORK      )
                       ) SS:
COUNTY OF ERIE         )

I, April M. Taulbee, being duly sworn, depose and say that I am the complainant herein. I have read the forgoing verified addendum to complaint and know its contents. The contents of the verified addendum to complaint are true and accurate, and as for items stated upon information and belief, I believe them to be true.

_April M. Taulbee_
April M. Taulbee

Sworn to before me on
_13th_ day of _June_, 2019.

_____
Notary Public

**EUGENE RAVENELL**
NOTARY PUBLIC-STATE OF NEW YORK
No. 01RA6345279
Qualified in Erie County
My Commission Expires July 25, 2020

6

**Subject:** FW: Resume and writing samples
**Date:** Wednesday, April 17, 2019 at 3:27:04 PM Eastern Daylight Time
**From:** Colin Nekritz (sent by Colin Nekritz <nekritzc@dyc.edu>)

> **From:** "Bowen, Randyll" <bowenr@dyc.edu>
> **Date:** Tuesday, December 5, 2017 at 8:47 AM
> **To:** "Nekritz, Colin" <nekritzc@dyc.edu>
> **Subject:** RE: Resume and writing samples
>
> Ok. We need to start to build the case that she can no longer physically perform the requirements of the job. We can chat next week
>
> **Randyll Bowen**
> Vice President
> Student Life and Enrollment Management
> Koessler Adminstration Building Rm. 112
> 716-829-8336
> bowenr@dyc.edu
> Meet our students online
> Take our virtual tour

> **From:** Nekritz, Colin
> **Sent:** Tuesday, December 05, 2017 8:43 AM
> **To:** Bowen, Randyll
> **Subject:** Re: Resume and writing samples
>
> I'm not comfortable with that. We can have that convo next week.

> **From:** "Bowen, Randyll" <bowenr@dyc.edu>
> **Date:** Tuesday, December 5, 2017 at 7:42 AM
> **To:** "Nekritz, Colin" <nekritzc@dyc.edu>
> **Subject:** RE: Resume and writing samples
>
> I can get you up to speed with my conversation about April and the college attorney. Short answer is we need to request for starters to have her work 8:30 to 4:30. This is the college operating hours and should be the expectation made of her. If she can't do that, we would need to take the next steps with her.
>
> Randy
>
> **Randyll Bowen**
> Vice President

Student Life and Enrollment Management
Koessler Adminstration Building Rm. 112
716-829-8336
bowenr@dyc.edu
Meet our students online
Take our virtual tour

## Notarization of Complaint

Based on the information contained in this form, I charge the herein named respondent(s) with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this complaint, I understand that I am also filing my employment complaint with the United States Equal Employment Opportunity Commission under the Americans With Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment), and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment). This complaint will protect my rights under federal law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.
**PLEASE INITIAL** _AMT_

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.


_April M. Taulbee_
Sign your full legal name


Subscribed and sworn before me
This _13ᵗʰ_ day of _June_ , 20_19_

_____
Signature of Notary Public

**EUGENE RAVENELL**
**NOTARY PUBLIC-STATE OF NEW YORK**
No. 01RA6345279
Qualified in Erie County
My Commission Expires July 25, 2020

County: _Erie_    Commission expires: _7/25/2020_


*Please note: Once this form is completed, notarized, and returned to the New York State Division of Human Rights, it becomes a legal document and an official complaint with the Division.*

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To:  **April M. Taulbee**
**105 Jewett Parkway**
**Buffalo, NY 14214**

From:  **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2019-04066** | **Holly M. Shabazz,** **State & Local Program Manager** | **(929) 506-5316** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)*   **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

July 30, 2021

Enclosures(s)

**Judy A. Keenan,**
**District Director**

*(Date Issued)*

cc:  **Randyll Brown, VP Enrollment Mgmt. & Marketing**
**D'YOUVILLE COLLEGE**
**516 Brantwood Road**
**Amherst, NY  14226**

**Jennifer R. Scharf, Esq.**

**James J. Rooney, Esq.**

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.   *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),   **"major life activities"**  now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.